STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

*  *  *  *  *  *  *

2022 CA 0946

CARR AND ASSOCIATES, INC.

VERSUS

ROSELLE JONES

JUDGMENT RENDERED:          **MAY 1 0 2023**

*  *  *  *  *  *  *

Appealed from the
Twenty-Second Judicial District Court
Parish of St. Tammany • State of Louisiana
Docket Number 2018-10569 • Division J

The Honorable Ellen M. Creel, Presiding Judge

*  *  *  *  *  *  *

| | |
|---|---|
| Anthony S. Maska<br>Hammond, Louisiana<br> *and*<br>Joseph Raymond McMahon<br>Metairie, Louisiana | COUNSEL FOR APPELLANT<br>DEFENDANT— Roselle Jones |
| | |
| David L. Browne<br>Cynthia M. Cimino<br>Metairie, Louisiana | COUNSEL FOR APPELLEE<br>PLAINTIFF—Carr & Associates, Inc. |

*  *  *  *  *  *  *

**BEFORE: WELCH, PENZATO, AND LANIER, JJ.**

Penzato J. concurs in result only and assigns reasons

**WELCH, J.**

In this suit to recover remuneration due for appraisal and expert services performed in connection with a homeowner's fire-loss insurance claim, the homeowner appeals the trial court's judgment rendered after a bench trial in favor of the expert. For the following reasons, we maintain the appeal; we affirm in part, amend in part, and affirm as amended.

## FACTS AND PROCEDURAL HISTORY

The parties have a history of transacting business with one another. Roselle Jones was the owner of immovable property located at 1817 Napoleon Avenue in New Orleans, Louisiana. Ms. Jones hired Earl Carr, Jr.'s company, Carr & Associates, Inc. (collectively "Carr"), to perform appraisal and estimating services in connection with a hurricane claim filed with her homeowner's insurer, Chubb & Son Inc./Chubb Group of Insurance Companies/Federal Insurance Company (collectively "Chubb"), dating back to Hurricane Katrina. Carr successfully helped Ms. Jones obtain insurance proceeds in excess of one million dollars from Chubb on her hurricane claim.

Shortly after settling the hurricane claim, Ms. Jones' property was extensively damaged by a fire on October 24, 2008. Ms. Jones made a fire-loss claim with her same insurer, Chubb. In January 2009, Chubb made an initial, unconditional payment of $622,777.00 to Ms. Jones on the fire-loss claim. Thereafter, Ms. Jones hired Carr as her appraiser regarding the remaining open items on her fire-loss claim. Carr was charged with identifying and appraising the scope and value of the repairs to restore the property to its pre-fire condition. The parties memorialized the contract in writing on October 6, 2009. The contract, titled "Agreement and Authorization Nominating the Appraiser," set Carr's fees at the rate of $300.00 "per man hour for work performed measured portal to portal." The contract also provided for attorney's fees, court costs, and collection fees in the event of Ms. Jones' nonpayment. Ms.

Jones also signed an October 6, 2009 addendum, stating she understood there were no guarantees Carr's appraisal would yield additional payments from Chubb on her fire-loss claim. The parties do not dispute that Carr has never been registered or licensed as an appraiser in Louisiana. Chubb appointed Richard Huss as its appraiser. Carr and Huss agreed to the appointment of retired Judge Charles Hanemann as umpire to resolve any differences during the appraisal process.

Acting under the October 2009 agreement, Carr performed appraisal services for Ms. Jones through July 2012, on the remaining open items on her fire-loss claim. Carr obtained a partial appraisal award on Ms. Jones' fire-loss claim from Chubb in the amount of $477,426.00. Carr alleged, however, that Ms. Jones provided little to no cooperation in producing documentation on her fire-loss claim during the appraisal process to the frustration of both Carr and Chubb.

In 2012, the Legislature enacted La. R.S. 22:1807.1.[1] Effective August 1, 2012, La. R.S. 22:1807.1 requires appraisers for fire and extended insurance coverage to *register* and *pay* an applicant fee to the Commissioner of Insurance in order to engage in appraisal services. Prior to the enactment of La. R.S. 22:1807.1, Carr informed Ms. Jones that this legislation was being considered in an email dated March 30, 2012:

> Are you back from your trip? If so[,] we need to move forward with the production of documentation requested. The insurance commissioner has a bill in the legislature that will most likely prohibit me from being an appraiser. If this passes[,] most bills go into effect in August. So we need to get this resolved ASAP. Please call me to set up a date and time to provide the documentation. I think this can be resolved quickly if you provide the documentation requested.

Between the August 1, 2012 effective date of La. R.S. 22:1807.1, and through March 2013, Carr communicated with Chubb, at Ms. Jones' request, in attempts to

---

[1] See 2012 La. Acts No. 96, § 1 (eff. Aug. 1, 2012).

prevent Chubb from terminating the remaining open items on Ms. Jones' fire-loss claim. Other than those communications with Chubb, Carr performed no appraiser work on Ms. Jones' fire-loss claim. Carr informed Ms. Jones via email dated September 9, 2012, that he intended to withdraw as the appraiser if she failed to cooperation and refused to provide documentation related to her claim.

Six months later, in March 2013, Ms. Jones decided to terminate her fire-loss claim and move forward with a federal lawsuit that she had previously filed against Chubb.[2] Ms. Jones asked Carr to serve as an expert on her fire-loss claim in anticipation of trial. In a March 6, 2013 email, Ms. Jones gave Carr permission to speak to her attorney, Anthony S. Maska, regarding the litigation of her fire-loss claim. Thereafter, Carr worked as an "expert" on Ms. Jones' fire-loss claim litigation, helping to establish the extent of her damages. Carr generated an expert report, dated February 20, 2014, which he sent to Mr. Maska. The report indicated that the rate of Carr's expert services—for inspection, generating a report, and participating in mediation, deposition, and trial preparation—was $300.00 per hour.

Carr continued working as an expert on Ms. Jones' fire-loss claim litigation through April 20, 2014 (approximately one year), when she requested a final bill from Carr. Five days later on April 25, 2014, Carr emailed a final invoice to Ms. Jones. The final invoice showed an account billing statement for the appraiser work Carr performed from October 2009 through July 2012, as well as the expert services Carr performed from March 2013 through April 2014, at the rate of $300.00 per hour. The final invoice showed Ms. Jones owed Carr a total of $55,335.00 for his

---

[2] Ms. Jones filed suit against Chubb & Son, Inc. and Federal Insurance Company in 2009 for defendants' alleged failure to timely and fully compensate her for her various losses (covered under her homeowners' insurance policy), after an October 24, 2008 fire caused extensive damage to her home. After defendants removed the case to federal court, the case was closed for three years for an attempted appraisal process, then reopened and set for a bench trial on May 18, 2014. Prior to that trial, however, Ms. Jones filed an *ex parte*/consent motion to dismiss her lawsuit. The federal district court granted her motion to dismiss in an order signed on April 28, 2014, which dismissed the case with prejudice, each party to bear their own costs. See **Jones v. Chubb & Son, Inc.** *et al.*, Docket No. 2:09-CV-07516 (E.D. La.).

4

services. Carr's invoice reflected a partial payment of $5,000.00 made by Ms. Jones on April 2, 2014, leaving a total remaining balance of $50,335.00 due to Carr.

Ms. Jones did not pay Carr's final invoice. The parties discussed payment of the final invoice via email. On May 7, 2014, Ms. Jones offered to settle Carr's final invoice for $30,000.00, which Carr rejected. On May 21, 2014, Carr made a final demand for payment.

Thereafter, on June 30, 2014, Carr filed suit against Ms. Jones in the Civil District Court for the Parish of Orleans ("CDC"). Carr's petition alleged that "[i]n accordance with the remuneration agreed upon between the parties, the compensation due to petitioner ... is $50,335.00." Carr's suit was subsequently dismissed via a dilatory exception of improper service of citation upon Ms. Jones; thereafter, Carr properly served Ms. Jones. In response, Ms. Jones filed a declinatory exception raising the objection of improper venue. After the CDC signed a consent judgment[3] sustaining Ms. Jones' exception of improper venue, the matter was transferred to the Twenty-Second Judicial District Court ("22nd JDC") for the Parish of St. Tammany.

Ms. Jones then filed a peremptory exception raising the objection of prescription, arguing that suit was filed in an improper venue (the CDC) and did not interrupt prescription. The trial court sustained her exception. Carr's former counsel, The Law Offices of Robert C. Lehman, LLC, who had intervened in the lawsuit seeking attorney's fees and advanced litigation costs, appealed the trial court's judgment sustaining the exception of prescription. In **Carr & Assocs., Inc. v. Jones**, 2019-0550 (La. App. 1st Cir. 12/27/19), 292 So.3d 577, 584, this Court was tasked with determining whether the consent judgment constituted a legal barrier precluding consideration of whether the matter was timely filed in a court of proper

---

[3] In the consent judgment, the parties consented to the transfer only.

venue in the context of Ms. Jones' exception of prescription. This Court held that the consent judgment on the exception of improper venue was not a legal barrier that precluded consideration of venue as an element of prescription; thus, the trial court was required to make an independent determination regarding whether suit was originally filed in the proper venue before ruling on Ms. Jones' exception of prescription. Upon remand, the trial court denied Ms. Jones' re-urged exception of prescription.

The matter was set for bench trial on February 10, 2022. The parties prepared a joint pre-trial order, appeared for an in-chambers pre-trial conference, and attended a settlement conference three days prior to trial. The day after the settlement conference, Ms. Jones moved to continue the bench trial due to an "unavoidable, work-related absence," alleging that she had FAA-mandated "multi-day pilot training in Phoenix, Arizona" set to begin on February 8, 2022. Carr opposed the continuance.

The matter proceeded to a one-day bench trial on February 10, 2022. At the outset of trial, the trial court orally denied Ms. Jones' motion for continuance. After counsel for Carr rested his case-in-chief, counsel for Ms. Jones moved for a partial directed verdict regarding: 1) the scope of Carr's work under the parties' October 2009 contract after August 1, 2012; and 2) Carr's alleged failure to provide corroborating circumstances proving his entitlement to payment under a purported oral contract. Counsel for Ms. Jones argued that as of August 1, 2012, Carr could no longer legally engage in appraiser work for Ms. Jones; thus, any appraiser work he completed after that date was in breach of, or beyond the scope of, the parties' October 2009 contract. Counsel for Ms. Jones further argued that Carr failed to provide corroborating circumstances to prove he and Ms. Jones orally contracted for his expert services after August 1, 2012.

6

The trial court denied Ms. Jones' motion for partial directed verdict, reasoning:

> Whether [Carr] was doing appraisal work or expert work, the question the Court has[:] was there a thing, was there a price, was there … consent; his services, $300 an hour. Consent is shown not just by his testimony, not just by his bill, but by the defendant's behavior, the defendant's emails, which came into evidence without objection.
>
> So the Motion for Partial Directed Verdict is denied.

At the conclusion of the bench trial, the trial court took the matter under advisement. On March 21, 2022, the trial court rendered judgment in favor of Carr, and against Ms. Jones, awarding Carr $49,810.00 for services Carr provided to Ms. Jones under the October 2009 contract; awarding Carr reasonable attorney's fees under the contract in the amount of $19,924.00, through conclusion of the trial on the merits; awarding Carr court costs paid thus far through ultimate collection of the full sum owed; and awarding judicial interest under the contract from April 29, 2014, until paid. The trial court issued written reasons for its judgment. Ms. Jones now appeals[4] the trial court's March 21, 2022 judgment.

## APPELLATE JURISDICTION

Appellate jurisdiction extends to final judgments. See La. C.C.P. arts. 1841, 2081, and 2083(A); **Quality Envtl. Processes, Inc. v. Energy Dev. Corp.**, 2016-0171, 2016-0172 (La. App. 1st Cir. 4/12/17), 218 So.3d 1045, 1053. A valid final judgment must be precise, definite, and certain. See **Laird v. St. Tammany Par. Safe Harbor**, 2002-0045 (La. App. 1st Cir. 12/20/02), 836 So.2d 364, 365. Furthermore, a final, appealable judgment must contain decretal language, and it must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied. **Advanced Leveling &**

---

[4] Ms. Jones timely filed a petition for suspensive appeal on May 3, 2022. The trial court signed an order of appeal on May 5, 2022, notice of which was transmitted by the clerk of court to the parties on May 12, 2022.

7

**Concrete Solutions v. Lathan Company, Inc.**, 2017-1250 (La. App. 1st Cir. 12/20/18), 268 So.3d 1044, 1046 (*en banc*), citing **Laird**, 836 So.2d at 365; **Carter v. Williamson Eye Center**, 2001-2016 (La. App. 1st Cir. 11/27/02), 837 So.2d 43, 44. In the absence of proper decretal language, a judgment is defective, and the appellate court lacks jurisdiction to review the merits. **Boyd Louisiana Racing, Inc. v. Bridges**, 2015-0393, 2015-0394, 2015-0395 (La. App. 1st Cir. 12/23/15), 2015 WL 9435285 at *4 (unpublished).

Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable pursuant to La. C.C.P. art. 1920, which has been liberally interpreted as granting broad discretion to the trial court. **Gauthier v. Wilson**, 2004-2527 (La. App. 1st Cir. 11/4/05), 927 So.2d 383, 390, writ denied, 2005-2402 (La. 3/31/06), 925 So.2d 1258. However, the only costs which can be taxed against a litigant are those specifically provided for by statute. **State Through Department of Highways v. Salemi**, 249 La. 1078, 1082, 193 So.2d 252, 253 (1966); **Town of Walker v. Stafford**, 2001-2188 (La. App. 1st Cir. 10/18/02), 833 So.2d 349, 356, writs denied, 2003-0441, 2003-0524 (La. 4/25/03), 842 So.2d 400, 405. Therefore, a decree ordering a litigant to pay "all costs" means that the litigant is to pay costs provided for by statute, sometimes termed "legal costs" or "costs of the proceedings." See **St. Tammany Par. Hosp. Serv. Dist. No. 2 v. Schneider**, 2000-0247 (La. App. 1st Cir. 5/11/01), 808 So.2d 576, 588. See also **Locke v. MADCON Corp.**, 2022-0630 (La. App. 1st Cir. 12/22/22), ___ So.3d ___, ___, 2022 WL 17845489 at *2.

Louisiana Revised Statutes 13:4533 provides, "The costs of the clerk, sheriff, witness' fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs." Fees for expert witnesses are addressed in La. R.S. 13:3666(A), which mandates that such witnesses "shall receive additional compensation, to be fixed by the court, with reference to the value

8

of time employed and the degree of learning or skill required." Under La. R.S. 13:3666 and 13:4533, as well as La. C.C.P. art. 1920, the trial court has great discretion in awarding costs, including expert witness fees, deposition costs, exhibit costs, and related expenses. **Suprun v. Louisiana Farm Bureau Mut. Ins. Co.,** 2009-1555 (La. App. 1st Cir. 4/30/10), 40 So.3d 261, 267.

The trial court retains jurisdiction to set and tax court costs, expert witness fees, and attorney fees pursuant to La. C.C.P. art. 2088(A)(10), since the amount of court costs cannot be determined with certainty until after trial. **Denton v. State Farm Mut. Auto. Ins. Co.,** 2008-0483 (La. 12/12/08), 998 So.2d 48, 55. However, a judgment that awards a sum to which must be added the costs of additional expenses that are yet to be calculated is not a final judgment over which this court can exercise appellate jurisdiction. **U.S. Bank Nat'l Ass'n as Tr. for RFMSI 2005S7 v. Dumas,** 2021-0585 (La. App. 1st Cir. 12/22/21), 340 So.3d 246, 250.

In the instant matter, the trial court's March 21, 2022 judgment provided:

> **IT IS HEREBY ORDERED ADJUDGED AND DECREED** that there be judgment in favor of Plaintiff Carr & Associates, Inc. and against Defendant Roselle Jones as follows:
>
> \*\*\*
>
> 3. Awarding Plaintiff Carr & Associates, Inc. all of Plaintiff's court costs paid in this matter thus far *and through ultimate collection of the full sum owed*.

(Emphasis added).

It is not determinable from the judgment's language—"court costs paid … through ultimate collection of the full sum owed"—whether the trial court's order to pay "court costs" means the payment of those costs that are specifically provided for by statute, *i.e.*, "legal costs" or "costs of the proceedings." See La. C.C.P. art. 1920; **Salemi,** 193 So.2d at 253; **Town of Walker,** 833 So.2d at 356; **Schneider,** 808 So.2d at 588; **Locke,** ___ So.3d at ___, 2022 WL 17845489 at \*2. It appears from the language of the judgment that the trial court awarded costs "that are yet to be

calculated," which is not a final judgment over which this court can exercise appellate jurisdiction. See **U.S. Bank Nat'l Ass'n as Tr. for RFMSI 2005S7**, 340 So.3d at 250.

This Court issued an interim order on March 21, 2023, remanding the matter in accordance with La. C.C.P. art. 2088(A)(12) for the limited purpose of instructing the trial court to sign an amended judgment. **Carr & Associates, Inc. v. Jones**, 2022-0946 (La. App. 1st Cir. 3/21/23) (unpublished action). Thereafter, the Clerk of Court for the Twenty-Second Judicial District Court for the Parish of St. Tammany supplemented the record on appeal with an amended judgment signed on April 19, 2023, which cured the apparent defect. We therefore maintain the appeal.

## LAW AND DISCUSSION

### Motion to Continue

In her first assignment of error, Ms. Jones asserts that the trial court erred in denying her motion to continue the bench trial. Continuances may be granted on either peremptory or discretionary grounds. La. C.C.P. arts. 1601 and 1602. The peremptory grounds for a continuance are when "the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance." La. C.C.P. art. 1602. Otherwise, "[a] continuance may be granted in any case if there is good ground therefor." La. C.C.P. art. 1601. The trial court has wide discretion in ruling on a motion for continuance, and absent a clear showing of an abuse of that discretion, the appellate court will not disturb the trial court's ruling on appeal. **Newsome v. Homer Mem'l Med. Ctr.**, 2010-0564 (La. 4/9/10), 32 So.3d 800, 802 (*per curiam*); **McCoy v. Manor**, 2018-1228 (La. App. 1st Cir. 5/9/19), 277 So.3d 344, 347.

The record shows that the parties attended an in-chambers status conference on July 12, 2021 with the trial court, and that this matter was set for bench trial on

February 10, 2022 by a scheduling order dated July 12, 2021. Thus, Ms. Jones had notice as early as July 2021 that this matter was set for trial on February 10, 2022. The record further shows that the parties prepared a joint pre-trial order and submitted it to the trial court on January 5, 2022. The minutes reflect that the parties also appeared for an in-chambers pre-trial conference with the trial court on January 10, 2022. The parties also attended a settlement conference on February 7, 2022, three days prior to trial. The day after the settlement conference, February 8, 2022, Ms. Jones moved to continue the bench trial due to an "unavoidable, work-related absence," alleging that she had a "multi-day pilot training in Phoenix, Arizona" set to begin that day, February 8, 2022. As stated above, Carr opposed the continuance.

At the beginning of the bench trial on February 10, 2022, the trial court heard argument from counsel regarding Ms. Jones' motion to continue. Counsel for Ms. Jones stated that she would miss the trial because she was in FAA-mandated flight training in Phoenix, Arizona. Counsel noted that Ms. Jones was aware it was possible her training could conflict with the bench trial, and that she "made various efforts to try to confirm whether or not she would be able to get out of it, reschedule it. She was unable to do so… ." Counsel argued that Ms. Jones "had to make a choice between losing her job and appearing in court today" and that there was "no way to reschedule" the flight training. Ms. Jones' counsel offered no evidence in support of her motion to continue.

Counsel for Carr argued that Ms. Jones knew in advance of trial that it was possible she would be unavailable to appear in court on February 10, 2022, and that her motion to continue was "an eleventh-hour motion." Counsel further argued that Ms. Jones presented no evidence of "good cause" for a continuance, such as an affidavit or letter from her or a controlling government authority indicating that the flight training was mandatory and could not be rescheduled. Counsel argued that Ms. Jones made no mention that flight training could potentially conflict with the trial

11

date during the January 10, 2022 pre-trial conference, a month prior to trial. Counsel for Carr further argued the impossibility of her employment being prejudiced by missing the flight training, when at the February 7, 2022 settlement conference, counsel for Ms. Jones represented that she was unemployed.[5]

After hearing the parties' arguments on Ms. Jones' motion to continue, the trial court orally denied the motion, reasoning:

> The Court is going to note that the lawsuit has been pending since 2014, so it's been seven-and-a-half years, at least, pushing eight. We've known about this trial date since July of 2021. We had a pretrial conference January 10th, and it wasn't until February 7th that we first learned that she had a mandatory training starting February 8th, the next day.
>
> At our pretrial, we did discuss that it was going back to January 4th that she was advised that there was an updated schedule for her training. I do realize, as counsel has shared with us at the pretrial conference, that January 10th, January 11th, January 14th, those [training] dates may not have been set in stone. They had been assigned to her. She was following up to be sure they were set in stone. I don't expect somebody to hope the guy ahead of them gets Covid in order for them to make a trial date, but at the same time, there was an email January 20th telling her that [training] starts February 8th, and that [training] was going. [D]espite her having knowledge of that January 20th, there was no communication with the Court for another 18 days at least requesting a continuance. Having discussed it with the Court three days before the trial and then filing the Motion to Continue is very much at the eleventh hour, particularly considering the age of this case. The Court's schedule, we have our cases stacked up like planes waiting to land, not with just the volume, but the litigation in the ordinary course of business. Had we known earlier, we probably could have scheduled something else for an economic use of the Court's time.

We find no abuse of discretion in the trial court's decision to deny Ms. Jones' motion to continue. According to the record, this matter had already been pending for eight years, and the parties had already incurred expenses preparing for trial. As shown by the transcript, the timeliness of the motion for continuance was of concern

---

[5] The record shows that in a September 12, 2012 email to Carr, Ms. Jones stated: "For the record, I retired from flying to be with my family."

to the trial court. Although Ms. Jones was allegedly mandated by the FAA to participate in flight training, the record reveals that she had knowledge of the need for the continuance as early as the pre-trial conference held in January 2022. However, Ms. Jones did not file a motion to continue until two days prior to trial. The transcript of the hearing contains no explanation for this delay. Further, counsel for Ms. Jones offered no evidence in support of her motion to continue. Given these circumstances, we find no abuse of discretion in the trial court's denial of Ms. Jones' motion for continuance.

**Unregistered Appraiser Recovery in the Absence of Contract**

Ms. Jones has raised seven assignments of error all relating to the trial court's findings that Carr presented sufficient testimony and corroborating evidence to show that the terms of the parties' October 2009 contract (and Carr's standard billing practices thereunder) continued beyond August 1, 2012; and, that Carr presented proof of services performed and entitlement to payment.

An appellate court's review of factual findings is governed by the manifest error or clearly wrong standard. **Lewis v. Fowler**, 2018-0365 (La. App. 1st Cir. 9/24/18), 259 So.3d 364, 366. The two-part test for the appellate review of a factual finding is: (1) whether there is a reasonable factual basis in the record for the finding of the trial court; and (2) whether the record further establishes that the finding is not manifestly erroneous. **Mart v. Hill**, 505 So.2d 1120, 1127 (La. 1987); **Marietta Tr. v. J.R. Logging Inc.**, 2016-1136 (La. App. 1st Cir. 5/11/17), 225 So.3d 1144, 1147, writ denied, 2017-1751 (La. 12/5/17), 231 So.3d 631. Thus, if there is no reasonable factual basis in the record for the trial court's finding, no additional inquiry is necessary to conclude there was manifest error. **Stobart v. State through Dep't of Transp. and Dev.**, 617 So.2d 880, 882 (La. 1993); **Lewis**, 259 So.3d at 366. If, however, a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines

13

the trial court's finding was clearly wrong. **Stobart**, 617 So.2d at 882; **Marietta**, 225 So.3d at 1147-48. The manifest error standard of review obligates an appellate court to give great deference to the trial court's findings of fact. We will not reverse factual determinations absent a finding of manifest error. **Rosell v. ESCO**, 549 So.2d 840, 844 (La. 1989). Moreover, where factual findings are based on determinations regarding the credibility of witnesses, the trier of fact's findings demand great deference and are virtually never manifestly erroneous or clearly wrong. **Secret Cove, L.L.C. v. Thomas**, 2002-2498 (La. App. 1st Cir. 11/7/03), 862 So.2d 1010, 1016, <u>writ denied</u>, 2004-0447 (La. 4/2/04), 869 So.2d 889. Even though an appellate court may feel that its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. **Rosell**, 549 So.2d at 844.

The trial court made these factual findings, as expressed in its reasons for judgment:

> Ms. Jones again hired Mr. Carr in October, 2009, for assistance with a fire insurance claim.... The contract was clear that Mr. Carr would provide his services at $300.00 per hour. At the time the contract was entered, the claim was in an appraisal process. The appraisal process eventually broke down.... Ms. Jones expressed her desire to pursue litigation against the insurer in April, 2013, and requested and specifically authorized Mr. Carr to continue his efforts to procure insurance proceeds via the litigation process with an attorney she had retained for that purpose. While that litigation was pending, changes in the law in regards to licensing/registration of appraisers became effective. After that point and not having a license or registration, Mr. Carr ceased his actions as an "appraiser," and continued working as part of Ms. Jones' litigation team as an expert based on his construction background and prior experience working both for and in opposition to insurance companies.

Contracts have the effect of law for the parties, and the interpretation of a contract is the determination of the parties' common intent. La. C.C. arts. 1983 and

14

2045; **Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC**, 2012-2055 (La. 3/19/13), 112 So.3d 187, 192 (citing **Marin v. Exxon Mobil Corp.**, 09-2368 (La. 10/19/10), 48 So.3d 234, 258). However, La. C.C. art. 1968 states, "[t]he cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy." To enforce the parties' October 2009 contract beyond the August 1, 2012 effective date of La. R.S. 22:1807.1 would produce a result prohibited by law, since La. R.S. 22:1807.1 is a rule of public order requiring appraisers to be properly registered and pay an applicant fee to the Commissioner of Insurance in order to engage in appraisal services on fire insurance contracts. See 2012 La. Acts No. 96, § 1 (effective Aug. 1, 2012).

Accordingly, the October 2009 written contract governed the parties from the date of its signing on October 6, 2009, until August 1, 2012, the effective date of La. R.S. 22:1807.1. Upon the effective date of the statute, the parties' written contract was terminated since Carr was now prohibited by law from serving as Ms. Jones's appraiser, as evidenced by his March 30, 2012 email to her. Thereafter, the trial court made a factual finding that Ms. Jones expressly authorized Carr in April 2013 to perform work as an "expert" in coordination with her attorney, Mr. Maska, during the litigation against her insurer, Chubb. The trial court did not, however, make an express factual finding that the parties executed an oral contract for Carr's expert services, agreed to a rate of payment for his work, or agreed to the payment of attorney's fees. However, regardless of whether the parties orally contracted for Carr's expert services, we readily apply the equitable doctrine of unjust enrichment to support recovery in Carr's favor for his expert services.

The root principle of unjust enrichment is that the plaintiff suffers an economic detriment for which he should not be responsible, while the defendant receives an economic benefit for which she has not paid. **Quaternary Resource Investigations, LLC v. Phillips**, 2018-1543 (La. App. 1st Cir. 11/19/20), 316 So.3d

15

448, 462, <u>writ denied</u>, 2020-01450 (La. 3/2/21), 311 So.3d 1059. <u>See also</u> **Pearce v. Safety & Health Assocs., Inc.,** 510 So.2d 1345, 1349 (La. App. 3rd Cir.), <u>writ denied</u>, 513 So.2d 824 (La. 1987) (where an economic benefit is incurred to the economic detriment of another, even if the court is unable to find a contract in regard to payment for services, the court would readily apply the equitable doctrine of unjust enrichment.). Louisiana Civil Code article 2298, titled "Enrichment without cause; compensation," provides:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.
>
> The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less.
>
> The extent of the enrichment or impoverishment is measured as of the time the suit is brought or, according to the circumstances, as of the time the judgment is rendered.

To prevail on an unjust enrichment claim, the plaintiff must prove by a preponderance of the evidence all five elements: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the resulting impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) the lack of another remedy at law. **Quaternary**, 316 So.3d at 463.

The evidence presented at trial showed that during the appraisal process, Carr maintained time and billing records for his services and submitted those records to Ms. Jones. On February 18 and 21, 2011, Carr emailed an interim account billing statement to Ms. Jones showing that he spent 82.25 hours working as an appraiser on her fire-loss claim through that date. Carr billed in quarter-hour increments (his standard billing practice), at the rate of $300.00 per hour, for a total due of

$24,675.00. Carr testified that Ms. Jones made no complaints about Carr's invoice or his quarter-hour billing practices. There is no evidence in the record that Ms. Jones paid the February 18, 2011 invoice. Ms. Jones "did not recall receiving" the February 2011 account billing statement, which Carr later resent to her. In May 2012, Carr also prepared a "Fee Schedule" showing that a $300.00 hourly rate would be billed for his time spent traveling, conducting site inspections, engaging in research, preparing reports, reviewing files, and preparing for deposition and trial. He provided the "Fee Schedule" to Mr. Maska in 2014. Again, Ms. Jones did not dispute the "Fee Schedule."

The evidence presented at trial showed that during the litigation process, Ms. Jones hired Carr to work as an expert on her fire-loss claim. The evidence shows that Ms. Jones expressly authorized Carr, in an email dated March 6, 2013, to speak to her attorney, Mr. Maska, about her fire-loss claim lawsuit against Chubb. In an email dated March 7, 2013, Carr responded, "Yes, I will be happy to cooperate with Mr. Maska and per your instructions[,] I will contact him." In an email dated April 14, 2013, Ms. Jones confirmed that Carr would be present at Mr. Maska's office the next day for a meeting regarding her lawsuit. The record shows that in anticipation of trial, Carr prepared and submitted an expert report to Mr. Maska on February 20, 2014, which included his Curriculum Vitae. In fact, the record shows that Carr and Mr. Maska communicated frequently regarding Ms. Jones' lawsuit, with Carr providing Mr. Maska with extensive documentation generated during the appraisal process on Ms. Jones' fire-loss claim. Carr reviewed Chubb's expert documentation and participated in mediation. Further, Chubb planned on deposing Carr in connection with this lawsuit, for which Carr prepared with Mr. Maska.

Immediately prior to the federal district court's dismissal of her lawsuit against Chubb on April 28, 2014, Ms. Jones telephoned Carr and requested a final bill. Carr submitted his final invoice on April 22, 2014, showing a balance owed to

him of $50,335.00 for his services. Ms. Jones did not pay Carr's final invoice. She stated that she was "in disagreement with the times." The parties discussed payment of the invoice via email. On May 7, 2014, Ms. Jones offered to settle Carr's invoice for $30,000.00, which Carr rejected. On May 21, 2014, Carr made a final demand for payment.

After reviewing the record in its entirety, we find that the trial court did not manifestly err in rendering judgment in favor of Carr in the amount of $49,810.00 for his appraiser and expert services performed for Ms. Jones. The record clearly shows that Ms. Jones obligated herself to pay Carr's fees, billed in quarter-hour increments, at the rate of $300.00 per hour, for his work performed as her appraiser under the parties' October 2009 contract. Ms. Jones presented no evidence at trial showing she ever disagreed with Carr's rate or his standard billing practices; in fact, the record shows that Carr provided Ms. Jones with interim accounting billing statements, which she did not dispute. Based on our review of the record in its entirety, we hold that the trial court did not manifestly err in finding that Carr presented sufficient testimony and corroborating evidence at trial to prove he performed the billed appraisal services and was entitled to payment.

Furthermore, under La. C.C. art. 2298, we find that Carr is entitled to payment for his work performed as an expert during the litigation of Ms. Jones' fire-loss claim through the equitable doctrine of unjust enrichment. The uncontroverted testimony and evidence presented at trial shows that Ms. Jones hired Carr as an expert on her lawsuit. Ms. Jones expressly authorized Carr to speak with her attorney. The record shows that during the litigation, Carr met with Ms. Jones at Mr. Maska's office to discuss the lawsuit. Carr communicated via email and telephone with Mr. Maska and Ms. Jones. Carr provided Mr. Maska with all the documentation he generated during the appraisal process of Ms. Jones' fire-loss claim. Carr prepared an expert report and reviewed Chubb's expert documentation. Carr prepared for and

18

participated in a mediation that was also attended by Ms. Jones. Carr prepared for a deposition, which ultimately did not occur, since Ms. Jones dismissed her lawsuit. Carr reported directly to Ms. Jones. Upon completion of his expert services, Carr submitted a final invoice, including detailed account billing statements, to Ms. Jones. There is no controverting evidence that Ms. Jones disputed Carr's rate of $300.00/hour or his standard quarter-hour standard practice at any time during the performance of Carr's expert services, nor did Ms. Jones ever indicate that she would not pay for his expert services rendered. The record shows that Ms. Jones gained an economic benefit by having Carr serve as an expert on her lawsuit; that economic benefit was to the detriment of Carr. See **Quaternary**, 316 So.3d at 463.

**Attorney's Fees**

In her ninth and final assignment of error, Ms. Jones argues that the trial court erred in granting attorney's fees in favor of Carr for any work done pursuant to the parties' contract after August 1, 2012.

Attorney's fees are not allowed except where authorized by contract or statute. **State, Dep't of Transp. & Dev. v. Wagner**, 2010-0050 (La. 5/28/10), 38 So.3d 240, 241 (*per curiam*); **H&E Equip. Services, Inc. v. Sugar & Power Int'l, LLC**, 2016-1070 (La. App. 1st Cir. 2/17/17), 215 So.3d 446, 451. The parties' October 2009 contract provided for attorney's fees. As expressed in its reasons for judgment, the trial court stated, "The uncontroverted testimony at trial was that Mr. Carr would have to pay out of pocket 40% of his recovery for attorney's fees, or $19,924.00 plus costs." We find that Carr is entitled to an award of attorney's fees on 40% of his recovery for hours billed during the duration of the parties' contract, from October 6, 2009 through July 31, 2012, at the rate of $300.00 per hour.

The final invoice shows that Carr billed 118.29 hours from October 6, 2009 through July 31, 2012. The trial court deducted 1.75 hours from Carr's final invoice for seven line items where Carr testified that he billed 0.25 hours, but did not actually

work 0.25 hours. The trial transcript reveals that those seven line items were billed during the duration of the parties' contract. Like the trial court, we deduct 1.75 from 118.29 hours billed, for a total of 116.54 hours billed from October 6, 2009 through July 31, 2012. At the rate of $300.00 per hour, those billed hours total $34,962.00. Forty percent of $34,962.00 is $13,984.80. Thus, we amend the trial court's attorney's fee award to award Carr $13,984.80 in attorney's fees pursuant to the parties' October 2009 contract.

## DECREE

We affirm the portion of the trial court's March 21, 2022 amended judgment, in favor of Carr & Associates, Inc. and against Roselle Jones, awarding Carr & Associates, Inc. $49,810.00 for appraiser services performed under the parties' October 2009 contract and for expert services performed in support of the federal litigation of Roselle Jones' fire-loss claim.

We amend the portion of the trial court's March 21, 2022 amended judgment, in favor of Carr & Associates, Inc. and against Roselle Jones, awarding attorney's fees. We award Carr & Associates, Inc. $13,984.80 in attorney's fees from October 6, 2009 through July 31, 2012, pursuant to the parties' October 2009 contract. We affirm the award of attorney's fees as amended.

We affirm the portion of the trial court's March 21, 2022 amended judgment, in favor of Carr & Associates, Inc. and against Roselle Jones, awarding Carr & Associates, Inc. all costs of the proceedings.[6]

We amend the portion of the trial court's March 21, 2022 amended judgment, in favor of Carr & Associates, Inc. and against Roselle Jones, awarding judicial interest. We award Carr & Associates, Inc. judicial interest from the date of Carr's

---

[6] The trial court has great discretion in awarding costs, and on appeal, the trial court's assessment of costs will not be disturbed absent an abuse of discretion. **Reynolds v. Louisiana Dep't of Transp.**, 2015-1304 (La. App. 1st Cir. 4/13/16), 194 So.3d 56, 59. We find no abuse of the trial court's discretion in awarding Carr costs of the trial court proceedings.

final demand for payment, May 21, 2014, until paid in accordance with La. C.C. art. 2000, La. R.S. 9:3500, and La. R.S. 13:4202. We affirm the award of judicial interest as amended.

We assess all appellate court costs to the appellant, Roselle Jones.

**APPEAL MAINTAINED; AFFIRMED IN PART, AMENDED IN PART, AND AFFIRMED AS AMENDED.**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 CA 0946

CARR & ASSOCIATES, INC.

VERSUS

ROSELLE JONES

*AHP by JEW*

**PENZATO, J., concurs in the result only and assigns reasons.**

**PENZATO, J., concurring.**

I agree with the majority that the trial court properly awarded damages in favor of Carr and against Jones in the amount of $49,810.00 and would affirm, although for different reasons. For reasons set forth below, I find that Carr proved that the nature of his contractual relationship with Jones was an open account pursuant La. R.S. 9:2781.[1]

*Open Account, Oral Agreement for Services*

Louisiana Revised Statutes 9:2781 pertinently provides,

A. When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant.[2]

\* \* \* \*

D. For the purposes of this Section and Code of Civil Procedure Articles 1702 and 4916, "open account" includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions. "Open account" shall include debts incurred for professional services, including but not limited to legal and medical services. For the purposes of this Section only, attorney fees shall be paid on open accounts owed to the state.

---

[1] In his petition, Carr alleged that he was due compensation from Jones on open account, and the parties addressed this issue in the joint pre-trial order submitted to the trial court. Thus, the issue was properly before the trial court.

[2] The evidence at trial established that Carr made written demand upon Jones, who failed to pay. *See* La. R.S. 9:2781(A).

1

E. As used in this Section the following terms shall have the following meanings:

\* \* \* \*

(2) "Reasonable attorney fees" means attorney fees incurred before judgment and after judgment if the judgment creditor is required to enforce the judgment through a writ of fieri facias, writ of seizure and sale, judgment debtor examination, garnishment, or other post-judgment judicial process.

\* \* \* \*

An open account is an account in which a line of credit is running and is open to future modification because of expectations of prospective business dealings, and services are recurrently granted over a period of time. *Signlite, Inc. v. Northshore Service Center, Inc.*, 2005-2444 (La. App. 1st Cir. 2/9/07), 959 So.2d 904, 907. "Any account" as used in La. R.S. 9:2781 means literally any account and specifically includes "debts incurred for professional services." *See Frey Plumbing Co., Inc. v. Foster*, 07-1091 (La. 2/26/08), 996 So.2d 969, 972 (per curiam). An oral agreement to provide services may form the basis of an open account. *See Seale & Ross, P.L.C. v. Holder*, 2019-1487 (La. App. 1st Cir. 8/3/20), 310 So.3d 195, 200 (suit on open account based on oral agreement to provide legal representation); *Premier Tugs, LLC v. Caillou Island Towing Co., Inc.*, 2019-1166 (La. App. 1st Cir. 6/18/20), 307 So.3d 218, 221 (suit on open account based on oral agreement to provide tugboat services). The creditor suing on open account has the burden of proving the contract. *Seale & Ross, P.L.C.*, 310 So.3d at 200.

It is undisputed that a written contract existed between Jones and Carr concerning the services rendered by Carr from October 2009 to August 2012. I find that Carr satisfied his burden of proving the existence of an oral agreement with Jones for services rendered by Carr from August 2012 through April 2014. When claiming the existence of an oral contract for the payment of money above $500.00 in value, as in the present case, La. C.C. art. 1846 requires the party to prove the existence and terms of the contract by at least one credible witness and other corroborating circumstances. *Barges Unlimited Inc. v. Morgan City Stevedores,*

2

*LLC*, 2022-0691 (La. App. 1st Cir. 2/2/23), ___ So.3d ___, 2023 WL 1463263, *7. To meet this burden of proof, a party to the contract may be his own witness and only general corroboration is required from another source. It is not necessary that the plaintiff offer independent proof of every detail. *Suire v. Lafayette City-Parish Consolidated Government*, 2004-1459 (La. 4/12/05), 907 So.2d 37, 58; *Archaga v. Johnson*, 19-85 (La. App. 5th Cir. 10/16/19), 280 So.3d 331, 337, *writ denied*, 2019-01837 (La. 1/14/20), 291 So.3d 682. Text messages and emails generated by the other party to the alleged oral agreement may constitute the necessary "corroborating circumstances" sufficient to establish an oral contract between the parties. *Id.* Additionally, prior contracts between the parties may corroborate the testimony of one of them concerning the making of another contract by the same parties. *Price Farms, Inc. v. McCurdy*, 45,409 (La. App. 2d Cir. 7/7/10), 42 So.3d 1099, 1105. A valid contract may exist between the parties, although there was no express agreement as to price. *Tallulah Construction, Inc. v. Northeast Louisiana Delta Community Development Corp.*, 2007-1029 (La. App. 4th Cir. 4/23/08), 982 So.2d 225, 233.

Between August 2012 and January 2013, Carr charged Jones for sending or receiving emails to/from Jones and other individuals associated with the pending fire insurance appraisal process. Carr testified that after August 2012, he tried to preserve the on-going appraisal that was the subject of the October 2009 contract with Jones. Emails from Jones to Carr in August and September 2012 corroborate Carr's testimony that he continued to provide services to Jones for this purpose, with Jones's consent. During this time, Jones continued to communicate with Carr about the appraisal, often inquiring as to whether he took certain actions and followed up with particular individuals. Jones also asked Carr to meet on several occasions during this time to discuss various issues related to the appraisal. It is evident that

3

Jones intended, understood, and agreed that Carr would continue to provide services to her, in some capacity, after August 2012 in connection with the fire appraisal.

Carr testified that in early 2013, Jones terminated the appraisal process and asked him to transition his services from being an appraiser to something else. Jones's March 6, 2013 email to Carr confirms that Carr had Jones's "permission" to speak to her attorney, Anthony Maska, concerning the Chubb claim. Jones's April 14, 2013 email to Carr reflects that she and Carr planned to meet with Mr. Maska the following day. This evidence again corroborates Carr's testimony that an oral agreement existed between the parties and demonstrates that Jones intended, understood, and agreed that Carr would continue to provide services, in some capacity, in March 2013 for Jones's benefit in connection with the fire appraisal. Notably, on appeal, Jones "does not dispute that [Carr] provided expert opinion assistance circa March of 2013 through April 2014."

I also find that the parties' October 2009 contract, as well as their prior working relationship concerning Jones's claim against Chubb for damage to her home following Hurricane Katrina, bolsters the finding that an oral agreement existed between the parties. *See Price Farms, Inc.*, 42 So.3d at 1105.

Since Carr successfully established that written and oral agreements existed with Jones, it must next be determined whether the facts support a finding that Carr's agreement with Jones is one on open account. This court considers several factors to determine if a contract falls under the open account statute: (1) whether the total cost or price is left open or undetermined, (2) whether other business transactions between the parties existed, (3) whether one party extended a line of credit to another, (4) whether there are running or current dealings, and (5) whether there are expectations of future dealings. However, the open account statute does not require multiple transactions or for parties to anticipate future transactions. *Louisiana*

*Machinery Co., LLC v. Bihm Equipment Co.*, 2019-1081 (La. App. 1st Cir. 8/10/21), 329 So.3d 317, 325.

A majority of these considerations are satisfied here. When the parties first entered the written contract in October 2009, they agreed to Carr's hourly rate of $300.00, but they never set a total price for the work or services to be performed by Carr. The total amount was undetermined. Over the next several years, Carr continuously provided services to Jones in connection with her fire insurance claim and kept contemporaneous time and billing records. Carr provided Jones with an invoice in February 2011, which reflected charges from October 2009 (mistakenly logged by Carr as September 2009) through February 2011. Although Jones did not submit payment, Carr continued to perform work and rendered services for Jones's benefit. A defining characteristic of an open account is that services are recurrently granted over a period of time. *Tri-Parish Electrical Supply, Inc. v. Cypress Bend Investments, LLC*, 2012-787 (La. App. 3d Cir. 12/12/12), 105 So.3d 1036, 1039. *See Hayes v. Taylor*, 2001-1430 (La. App. 3d Cir. 3/27/02), 812 So.2d 874, 878 (finding the relationship between the parties was an open account, not a contract, where the plaintiff purchased materials and fixed the defendant's roof while keeping a tabulation of what was owed. Thus, the plaintiff performed the work while extending a line of credit to the defendant.) Similarly, here, Carr performed the work while keeping a tabulation of the time spent and amounts owed by Jones. Finally, as previously noted, the parties engaged in other, on-going business transactions wherein Carr provided similar services to Jones in an effort to resolve her insurance claim.

A reasonable price for services rendered by Carr to Jones from August 2012 to April 2014 is the final determination to be made in Carr's suit on open account. Where the parties failed to set the price, the trial court, in the context of contractual interpretation, shall supply the missing price. The technique or measure used to

establish the price varies according to the circumstances of each case. The method to determine the recovery typically amounts to the fair market value for the goods or reasonable value for the services that were the object of the contract. *Tallulah Construction, Inc.*, 982 So.2d at 233 (wherein the trial court considered the parties' prior agreement to a price of $48.00 per square foot to determine that $38.83 and $42.03 per square foot were fair and reasonable prices for the oral construction agreements at issue).

On appeal, Jones asserts that Carr's expert services should have been billed at something less than $300.00 per hour and in one-tenth of an hour increments; however, she offered no evidence at trial to support her assertions. Instead, the October 2009 contract signed by Jones, agreeing to pay Carr $300.00 per hour for appraisal work in connection with her fire insurance claim was the only evidence before the trial court to establish Carr's hourly rate. Although Carr's unofficial title and the nature of his work shifted from appraiser to expert during the course of the parties' business relationship, at all times Carr undisputedly provided services to Jones in connection with her fire insurance claim. I find no error in the trial court's determination that $300.00 per hour was a reasonable rate for the services rendered by Carr to Jones through April 2014.[3]

### Attorney Fees

Although La. R.S. 9:2781 allows for the recovery of attorney fees, the statute is penal in nature and must strictly construed. A claimant must strictly comply with the requirements of subsection (A) to recover attorney fees by, among other things, making written demand "correctly setting forth the amount owed." La. R.S. 9:2871(A); *Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc.*, 449 So.2d 1014,

---

[3] Carr testified that his billing account records were kept in the course of his business, and he testified as to the bill's accuracy, which the trial court found credible. Once this prima facie case was established, the burden shifted to Jones to prove the inaccuracy of the account or to prove that she was entitled to certain credits. *Tri-Parish Electrical Supply, Inc.*, 105 So.3d at 1039. The trial court concluded that Carr overbilled Jones by 1.75 hours and reduced his damages accordingly.

1016 (La. 1984) (finding attorney fees were improperly awarded pursuant to La. R.S. 9:2781 because the written demand included interest charges, which the court of appeal found were not owed). *See Cook v. O'Pry*, 448 So.2d 891, 892 (La. App. 3d Cir. 1984) (clamant not entitled to attorney fees pursuant to La. R.S. 9:2781 because the demand letter included the amount due on an invoice, which the court of appeal concluded was not available to clamant under the pleadings filed). Carr's written demand to Jones stated that $50,335.00 was the amount due; however, the trial court and this court found that the correct amount owed is $48,810.00. Therefore, I agree with the majority's modification of the trial court's judgment to limit the award of attorney fees to those owed by Jones to Carr pursuant to the parties' written contract. *Miss Bee's Snoworld, LLC v. Guidry*, 2020-0946 (La. App. 1st Cir. 6/18/21), 328 So.3d 477, 486 ("It is well-settled that attorney fees are not allowed except where they are authorized by a particular statute or provided for by contract.")